UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:15-00065 |
| | ) | Judge Sharp |
| DESHON BURLESON | ) | |

## MEMORANDUM

Pending before the Court are Defendant's Motion to Dismiss the Indictment (Docket No. 37) and his Second Motion to Dismiss the Indictment (Docket No. 50). Both motions seek dismissal of the Indictment on speedy trial grounds. Both will be denied.

### I. First Motion to Dismiss Indictment (Docket No. 37)

This Motion, filed weeks before the scheduled trial date of September 22, 2015, seeks to dismiss the Indictment pursuant to the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. 3161, *et seq*. Defendant's argument in regard to the Sixth Amendment is that between the time he was detained on January 15, 2015, and the scheduled trial date, 250 days elapsed. As for the Speedy Trial Act, he asserts that more than thirty days expired between the time he was arrested on federal charges and an Indictment was returned.

**A. Sixth Amendment**

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial and public trial." U.S. Const. amend. VI. The contention that a delay violates this requirement is considered "in light of four factors: 'Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" United States v.

1

Marchbanks, 631 Fed. App'x 386, 390 (6th Cir. 2015) (quoting United States v. Howard, 218 F.3d 556, 563 (6th Cir. 2000)). These factors are derived from the "balancing test, in which the conduct of both the prosecution and defendant are weighed" set forth by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 530 (1972).

"The length-of-delay factor serves as a threshold inquiry: if the length of the delay is not 'uncommonly long,' then the judicial examination ends, but a delay of one year is presumptively prejudicial and triggers application of the remaining three factors." United States v. Bass, 460 F.3d 830, 836 (6th Cir. 2006). "[A]s the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." Doggett v. United States, 505 U.S. 647, 652 (1992). This is because "presumptive prejudice cannot alone carry a Sixth Amendment claim," id. at 656, and "[w]hen the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced with specificity will not make out a speedy trial claim no matter how great the ensuing delay," United States v. Howard, 218 F.3d 556, 564 (6th Cir. 2000).

Here, far less than a year passed between the time Defendant was detained on federal charges and the targeted trial date. However, since more than a year has elapsed since the return of the Indictment and Defendant has not been tried, the court considers the other Barker factors.

In considering the second factor, the cause of the delay, "some reasons [weigh] more heavily than others." Maples v. Stegall, 427 F.3d 1020, 1026 (6th Cir. 2005). "For instance, government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while 'more neutral' reasons such as negligence or overcrowded dockets

weigh against the [government] less heavily." Id. (citing United States v. Schreane, 331 F.3d 548, 553-54 (6th Cir. 2003) (citing cases)). "The purpose of the inquiry is to determine 'whether the government or the criminal defendant is more to blame for [the] delay.'" Id. (quoting Doggett, 505 U.S. at 651).

In this case there is nothing to suggest that the government acted in bad faith, for tactical advantage, or to harass. To the contrary, the record reflects that much of the delay was due to Defendant, a point which will be discussed in more detail below. For now, it suffices to note that (1) Defendant thrice moved for a continuance of the detention hearing or portions thereof, only to withdraw his request for pretrial release; (2) moved to extend the deadline for filing pretrial motions to September 1, 2015; (3) filed the first Motion to Dismiss on the day of the new pretrial motion deadline; and (4) moved to stay the proceedings until a ruling on that motion could be made. The requested extensions were granted based of such things as counsel's contention that the case was "fact intensive"; "the alleged conduct involves numerous individuals;"; "a number of documents, records, and other pertinent information" needed to be gathered; and counsel simply needed more time to investigate the case. (Docket No. 35 at 3-4). Those reasons, without more, do not show a Sixth Amendment violation. See, Bass, 460 F.3d at 836 ("Delays due to the complexity of the case . . . support a finding that no Sixth Amendment violation occurred.").

The third factor is a defendant's assertion of his right to a speedy, which "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32. Here, of course, Defendant invoked his right to a speedy trial. However, he first did so on the eve of trial, and many months after the Indictment was returned, even though his claim is that more than thirty days passed between his arrest and the return of that charging document. In

3

the Court's view, this delay "is sufficient to 'cast doubt on the sincerity of [Defendant's] demand.'" United States v. Williams, 753 F.3d 626, 633-34 (6th Cir. 2014) (quoting United States v. Brown, 169 F.3d 344, 350 (6th Cir. 1999)).

The last factor to be considered is whether Defendant was prejudiced by the delay. This factor is analyzed based on the purposes behind the right to a speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" Barker, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id.

Defendant's sole argument on this factor - indeed, the only actual argument he makes in contending that the time between being detained on January 15, 2015, and the scheduled trial date violated his Sixth Amendment rights - is that he "has been incarcerated in county jails during this entire period, he has been the subject of public accusation, and he has suffered the prejudice of loss of liberty and freedom." (Docket No. 37 at 5). In making that argument, Defendant neglects to consider the fact that he was not in federal custody throughout this period. Rather (and as will also be discussed in more detail below), he was in state custody, first to answer charges out of Davidson County, and then to answer charges from Wilson County. Regardless, conclusory assertions about the restraint on liberty and being under "a cloud of anxiety [and] suspicion" are not enough, and "'[w]hen a defendant is unable to articulate the harm caused by delay, the reason for the delay (factor 2) will be used to determine whether the defendant was presumptively prejudiced.'" Williams, 753 F.3d at 634; see also United States v. Brown, 498 F.3d 523, 532 (6th Cir. 2007) ("[A]ny anxiety or concern defendant experienced here for ten months would fall short of that

4

deemed insufficiently prejudicial in Barker, where the defendant waited more than five years from arrest to trial"). Delay, as discussed previously, falls as much on Defendant as anyone else. Furthermore, he does not even suggest that the delay has impaired his ability to prepare a defense.

Simply put, Defendant has not come close to establishing the his Sixth Amendment right to a speedy trial were violated in this case.

**B. Speedy Trial Act**

Among other things, the Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Defendant argues that requirement was not met because he went into federal custody on January 15, 2015 (and certainly no later than January 23, 2015) but was not indicted until April 29, 2015.

The question of when Defendant was placed into federal custody consumed most of the hearing before this Court on May 19, 2016. Based on that hearing (which concluded on May 27, 2016) and the record, the Court makes the following findings regarding Plaintiff's arrest on federal charges.

On December 4, 2014, a Criminal Complaint was filed in this Court alleging that Defendant, having previously been convicted of a felony, possessed a firearm. That possession allegedly occurred on or about October 21, 2014, which is the day that Defendant – for the second time within a week – was arrested by the Metropolitan Nashville Police Department. On October 13, 2014, he was arrested on charges of criminal trespass, evading arrest, unlawful possession of a controlled substance, and gambling; on October 21, 2014 he was arrested for being a felon in possession of

weapons, theft of property, and evading arrest. Both times he posted bond through Brooke's Bail Bonding and was released on the day of his arrest.

On January 15, 2015, Defendant voluntarily went to the Davidson General Sessions Court to attend a preliminary hearing on the charges that arose from his October 2014 arrests. However, since that time a state arrest warrant had been lodged against him. That warrant, issued November 10, 2014, charged Defendant with assault based on an affidavit alleging that he had threatened to shoot Alexis Christian earlier that day. He was arrested on that charge shortly after the January 15, 2015 preliminary hearing.

At the preliminary hearing, the state court judge found probable cause to believe the defendant committed all the charges that served as the basis for his October 2014 arrests. The state court judge also told Defendant:

> Mr. Burleson, you did go into custody a little early. That was a mistake. So I do understand your confusion and your issue with that. However, you do have federal warrants, so you will have to go in custody today, sir, okay?"

(Docket No. 38-1, Trans. at 42). Those statements were not further explained, and the transcript does not contain any statements from Defendant or his state public defender discussing Defendant's concerns.

According to Defendant's testimony before this Court, he was escorted from the preliminary hearing by two United States Marshals who walked him over to the Criminal Justice Center for booking. Although Defendant never saw a federal arrest warrant on that day, he assumes that he was taken into custody based on a federal warrant. Defendant also conceded, however, that he was told he was being arrested on the assault charge involving Ms. Christian. More specifically, the following exchange occurred between the Assistant United States Attorney and Defendant:

6

> Q. What did they tell you you were being booked for?
>
> A. We walked out to the justice – we walked out of the justice center, went to the criminal justice center booking area. I asked the Marshal, what are we doing over here? He said you have state – you have state issues that you need to be – that you need to take care of first. He dropped me off. I was – went through the process, got booked [and] that was it.
>
> Q. So you would admit that who you identify as the Marshal told you that you had to – you had to take care of some state court matter first? Apparently, this Alexis Christian charge, whatever that is first, right? Right?
>
> A. I guess.

(May 19, 2015 Hrg. Trans. Rough Draft at 13:44:11 - 13:45:08).

As further support for his position, Defendant has filed the Declaration of David Kieley, the Assistant Public Defender who represented Defendant at the preliminary hearing. In that Declaration, Mr. Kieley states:

> 3. Prior to and at the conclusion of the January 15, 2015 hearing[,] Mr. Burleson was informed by the Court that he had federal warrants and, therefore, would be taken into custody. Further, at the conclusion of the hearing Mr. Burleson and I were informed by the arresting officers that he was being taken into custody on a federal gun charge, but would be booked first on an outstanding metro warrant and then would be taken by the federal authorities.
>
> 4. On January 15, 2015 it was clear that after the state preliminary hearing Mr. Burleson was going to be detained on that day by the federal government. Mr. Burleson was informed that there was a federal warrant pending for his arrest on federal gun charged. Mr. Burleson was informed that he had been charged with violating federal gun laws.

(Docket No. 49-1).

Mr. Kieley's ultimate legal and factual conclusion that it was "clear" Defendant was going to be detained by federal authorities on January 15, 2015, is not borne out by the booking records. Rather, those records show that from that date, until May 28, 2015 when he was released to the

7

custody of Wilson County, he was in jail on state charges. This is because, even though Defendant had made bond for the October 2015 arrests, Brooke's Bail Bonding decided to get off of the bonds upon learning that a new charge had been filed. Although not entirely certain on the point, Brooke Harlan, the owner of the bonding company, testified that Defendant had told her prior to the preliminary hearing that the United States Marshals were looking for him, but she believed the reason that Brooke's Bail Bonding sought to be relieved of the bonds on the prior cases was because Defendant had been arrested on the new state assault charges. A state judicial commissioner allowed Brooke's Bail Bonding to be taken off the bond some weeks after the preliminary hearing.

Nothing in the Davidson County booking records suggests that Defendant was being held on federal charges before Wilson County assumed custody. When an inmate is being held on federal charges, that is shown by an "I-299a" code, but no such code existed in Defendant's booking records. Rather, those records show Defendant was booked into the jail on January 15, 2015, on at least five of the state warrants issued in October 2015, with the notation "BOND SURRENDER (SURETY BROOKE'S BAIL BONDING)." (Govt. Ex. 5). This is further confirmed by an "Appearance Mittimus," dated January 15, 2015 and issued by Judicial Commissioner Nelson, which indicates that Defendant was to be held on eight state warrants where bond had been set in the total amount of $41,500 because "Brooke's Bonding requests to be relieved of these bond. The defendant has been arrested on new charges." (Govt. Ex. 6). Moreover, while a Detainer lodged by the Marshal's Service was faxed to the jail that same day, it simply indicated that an arrest warrant had been issued against Defendant for being a felon in possession, and requested that

> Prior to the subject's release from your custody, please notify this office at once so that we may assume custody if necessary. If the subject is transferred from your custody to another detention facility, we request that you forward our Detainer to said facility at the time of transfer and advise this office as soon as possible.

8

(Id. at 1).

The record is unclear as to the disposition of the state court charges against Defendant, except that he plead guilty to the October 2, 2014 criminal trespass charge on May 28, 2015 and was sentenced to time served. (Govt. Ex. 7). He was then placed in the custody of Wilson County because they had lodged a detainer on March 3, 2015 on a failure-to-appear warrant. Even though that detainer followed the federal detainer by many weeks, Wilson County obtained custody because the policy of the Davidson County jail is to turn over a released inmate to the first agency that can pick up the inmate.

Defendant was taken to the Wilson County Jail in the early morning hours of May 29, 2015. That same day, the Marshal's Service faxed the jail a Detainer request that it be informed when Defendant was to be released.

On April 29, 2015, an Indictment was returned in this Court charging Defendant with being a felon in possession of a weapon, and an arrest warrant was issued. Defendant was arrested on the federal Indictment on June 5, 2015.

As indicated, Section 3161(b) of the Speedy Trial Act requires that formal charges be filed within thirty days of the time that an defendant is arrested or served with summons on the federal charges. However, "the thirty-day arrest-to-indictment clock . . . 'is not triggered until there is a federal arrest.'" United States v. Jemison, 310 F. App'x 866, 873 (6th Cir. 2009) (quoting United States v. Murphy, 241 F.3d 447, 454 (6th Cir. 2001)). "The purpose of [this] thirty-day limit . . . is to insure that individuals will not languish in jail or on bond without being formally indicted on particular charges." United States v. DeJohn, 368 F.3d 533, 538 (6th Cir. 2004).

"Regardless of the degree of federal involvement in a state investigation and arrest, only a

9

federal arrest initiates the running of the time limitation established by 18 U.S.C. § 3161," and even "[a]n arrest by state officers, who are accompanied by federal officers, does not constitute an 'arrest' under section 3161." United States v. Blackmon, 874 F.3d 378, 381 (6th Cir. 1989) (collecting cases). Moreover, "when an individual is lawfully being held to answer to state charges, 'a criminal complaint coupled with an unexecuted arrest warrant and a federal detainer' do not trigger the act." United States v. Woolfolk, 399 F.3d 590, 595 (4th Cir. 2005) (quoting United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995)). "The key . . . is that there must be a 'federal deprivation of liberty' in connection with the detainer or complaint before the accused is entitled to the protections of the Speedy Trial Act." United States v. Clark, 754 F.3d 401, 406 (7th Cir. 2014).

In this case, Defendant had a "federal deprivation" of liberty on June 5, 2015, when he was taken into custody by federal agents. Before then, he was in custody on state charges – those filed in Davidson County and then on the failure to appear out of Wilson County.

In reaching this conclusion, the Court has considered Defendant's argument that his detention on state charges was really a sham to give the Government more time to shore up its case. While there is authority for the proposition that "'if [a] person is held in state custody at the request of federal authorities, the date of arrest by the state officers is controlling,'" Woolfolk, 399 F.3d at 596 (citation omitted), there is no evidence in this case to support an elaborate ruse that would involve, at a minimum, the United States Attorney's Office, the Marshal's Service, the Nashville Police Department, the Davidson County Jail, and the Wilson County Jail.

## II. Second Motion to Dismiss Indictment (Docket No. 50)

As originally formulated, this Motion asserted a Speedy Trial Act violation because far more than 70 days elapsed between the time he entered a plea of not guilty and the scheduled trial date

10

of September 22, 2015. In his reply brief and at the hearing, however, Defendant enlarged the claim to include the fact that a decision was not issued within thirty days of the filing of his first Motion to Dismiss. The Court considers the arguments in turn.

**A. Seventy-Day Period – 18 U.S.C. § 3161(c)(2) & (h)(1)(D)**

"A defendant may establish a prima facie case that the government has violated the Act by showing that he was not brought to trial within the seventy-day period." United States v. Gardner, 488 F.3d 700, 717 (6th Cir. 2007). "Once the defendant establishes that prima facie case, the government has the burden of showing that, after taking into account time excludable from the seventy-day period, the defendant was brought to trial during the statutorily mandated period." Id. "Such 'excludable time' includes delay due to pretrial motions and continuances." Id.

Defendant initially argued that there were at least 82 non-excludable days between the time of his initial appearance and the date he believes that a ruling on his first Motion to Dismiss should have been issued. The Government argued that only 43 non-excludable days occurred during that period.

> The Court agrees with the Government's position because the record shows the following:
>
> June 5, 2015 – Defendant's initial appearance and arraignment. Detention hearing set for June 11, 2015 based on Government's previously filed motion.
>
> June 11, 2015 – Defendant requests continuance of detention hearing to investigate charges and interview witnesses. Motion granted, and hearing reset for June 19, 2015.
>
> June 19, 2015 – Defendant requests a further continuance because of need to consult with witnesses and because counsel had trial scheduled for the week of June 29, 2015. Hearing reset for July 10, 2015.
>
> July 10, 2015 - Defense offers some witnesses at hearing, but asked for another continuance to clarify the defendant's criminal history, to offer additional testimony regarding the potential third-party custodian and available housing options. Hearing

11

> continued to July 17, 2015.
>
> July 17, 2015 – Defendant withdraws request for release.
>
> July 28, 2015 – Scheduling order entered setting jury trial for September 22, 2015.
>
> August 16, 2015 – Defendant files motion to extend time for pretrial motions, stating that the defense has received discovery and has not had adequate time to appropriately investigate.
>
> August 17, 2015 – This Court grants Defendant's motion to extend time to file pretrial motions.
>
> September 1, 2015 – First Motion to Dismiss based on speedy trial issue filed.

From the date of Defendant's initial appearance on June 5, 2015 through July 17, 2015, there were no countable days on the Speedy Trial Act clock because the Government's motion for detention was pending throughout this time, and disposition of that motion was delayed by Defendant's repeated requests for continuances of the scheduled hearing dates. 18 U.S.C. § 3161(h)(1)(D). Both August 16 and 17, 2015 are excluded because of the filing of Defendant's motion to extend deadlines. Thus, 43 speedy trial days elapsed between Defendant's initial appearance and the filing of his first Motion to Dismiss: July 18 to August 15 for a period of 29 days, and from August 19 to August 31, for a period of 14 days.

**B. 30-Day Period – 18 U.S.C. §§ 3161(h)(1)(d) & (h)(1)(H)**

At the continuation of the evidentiary hearing on May 27, 2016, Defendant submitted a time line in which he appears to now agree with the foregoing calculations. He insists however, that the trial clock began running again on October 29, 2015, which would have been 30 days after the filing of his reply brief in support of the First Motion to Dismiss. The Court disagrees.

The Speedy Trial Act excludes from the computation of time:

(1) Any period of delay resulting from other proceedings concerning the defendant,

12

including but not limited to–

> (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
> \*   \*   \*
>
> (H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

18 U.S.C.A. § 3161(h)(1). In discussing those two exclusions (previously subsections 3161(h)(1)(F) and (J)), the Sixth Circuit has observed that "[c]ases from both the Supreme Court and this circuit hold that there is no requirement that delays due to motions be reasonable." United States v. Bass, 460 F.3d 830, 835 (6th Cir. 2006) (citing, Henderson v. United States, 476 U.S. 321 (1986); United States v. Mentz, 840 F.2d 315 (6th Cir. 1988)).

The Supreme Court's decision in Henderson involved the following situation:

> A timely trial would have commenced on November 12, 1980, barring periods of excludable delay. Overlapping filings by petitioners and the Government, however, kept a suppression motion pending from its filing on November 3, 1980, through a hearing on that motion on March 25, 1981. The court deferred decision on the motion pending receipt of posthearing submissions from the parties, the last of which was filed on December 15, 1981. The District Court finally denied the motion to suppress on January 19, 1982.

476 U.S. at 323-24 (internal citation to the record omitted). The Court found the delay between November 3, 1980 through March 25, 1981, automatically excludable under § 3161(h)(1)(F) (now § 3161(h)(1)(d)), and the period from March 25, 1981 to January 19, 1982 also excludable, "conclud[ing] that for pretrial motions that require a hearing, the phrase 'or other prompt disposition' in subsection (F) does not imply that only 'reasonably necessary' delays may be excluded between the time of filing of a motion and the conclusion of the hearing thereon." Id. At

3329-30.

> Discussing <u>Henderson</u>, the Sixth Circuit in <u>Mentz</u> wrote:
>
> If a motion requires a hearing, we look first to section 3161(h)(1)(F), which excludes all the time between the filing of the motion and the conclusion of the hearing on that motion. . . . This exclusion of the time prior to the conclusion of the hearing is automatic. . . . After the hearing, the district court may need additional time to receive supplemental filings from the parties for proper resolution of the motion. This time is also excluded. . . . Once the hearing is concluded, and the district court has received all the submissions, there must be "prompt disposition" of the motion. This is where section 3161(h)(1)(J) comes into play. That provision excludes a maximum of 30 days from the day the motion is "actually under advisement by the court."
>
> For motions that do not require a hearing, <u>Henderson</u> teaches that the time after the motion is filed, while the district court may be waiting for additional submissions from the parties, is automatically excluded. . . . . If no additional submissions are required, or they have been furnished to the court, section 3161(h)(1)(F) requires "prompt disposition." Again, section 3161(h)(1)(J) becomes applicable and excludes a maximum of 30 days once the motion is "actually under advisement." . . .
>
> A motion is "actually under advisement" when 'the court receives all the papers it reasonably expects. . . . Thus, the 'under advisement' period will normally begin to run the day after the court has received additional submissions from the parties. . . . If the court has not requested any additional filings, however, this period will normally begin on the day following the conclusion of the hearing on the motion. If a hearing is not required, the advisement period will normally begin on the day the motion is filed. . .

840 F.2d at 326-27 (internal citations omitted).

Immediately after quoting that same language from <u>Mentz</u> in his reply brief, Defendant argues that "his first Motion to Dismiss was 'actually under advisement' by this Court on September 30, the day after the Court received all filings." (Docket No. 60 at 6). But that is not what either <u>Mentz</u> or <u>Henderson</u> teach. Those cases clearly state that when a motion requires a hearing, the time between the filing of the motion and the conclusion of the hearing or the submission of supplemental filings is excluded, as well as no more than 30 more days thereafter while the matter is under

14

advisement.

The Court concluded its hearing on May 27, 2015, and it was then that the matter became under advisement. Thirty days will not have elapsed between that date and the issuance of this decision. There was no violation of 18 U.S.C. § 3161(h)(1)(H).

At the evidentiary hearing on May 27, 2016, counsel for Defendant repeatedly informed the Court that she had a duty to raise the speedy trial issue on behalf of her client. Counsel also quoted the First Circuit decision in United States v. Richardson, 421 F.3d 17, 29 (1st Cir. 2005) for the proposition that it would "not permit either the district court or the prosecution to jerry-build a 'hearing' in order to thwart the concinnous operation of the Speedy Trial Act." Also, in Defendant's reply, counsel wrote that "[t]he government is essentially encouraging the Court to correct [a] clear violation of the Speedy Trial act by setting the defendant's first Motion to Dismiss for a hearing," and that "[t]he records in this matter amply demonstrates that a hearing is not required nor warranted on the issues pending before the Court." (Docket No. 60 at 6).

The First Circuit is hardly alone in expressing the view that manipulation of the Speedy Trial Act is unacceptable. The Sixth Circuit most recently did so in the context of a "start and stop" plan for the commencement of a trial, observing that "appellate courts have consistently condemned attempts by the district courts to 'evade the spirit of the Act by conducting voir dire within the statutory time limits and then ordering a prolonged recess with [the] intent to pay mere 'lip service' to the Act's requirements." United States v. Brown, 2016 WL 1161266, at *8 (6th Cir. Mar. 24, 2016) (quoting United States v. Scaife, 749 F.2d 338, 343 (6th Cir.1984)).

Counsel for criminal defendants undoubtedly have the duty to represent their clients zealously within the bounds of the law, and this duty, of course, encompasses bringing to the Court's

attention violations of the Speedy Trial Act. But the speculative suggestions that the Government prompted this Court to set a hearing so as to "correct a clear violation of the Speedy Trial Act," and that the Court jerry-rigged a hearing are unfounded.

Leaving aside that Defendant's first Motion to Dismiss was accompanied by a Motion to Stay proceedings until the speedy trial issue was resolved - a point not mentioned by counsel at the hearing (perhaps because it was not accompanied by a waiver) - the first Motion to Dismiss clearly required a hearing. That motion was conclusory and basically stated that Defendant was taken into federal custody on January 15, 2015. In his reply, Defendant reiterated that he "lost his liberty on January 15 solely because of the actions and representations of the United States agents who sought and obtained his arrest." (Docket No. 49). Six witnesses, more than 15 exhibits, and three-plus hours of testimony showed that not to be the case at all. See United States v. Payton, 257 Fed. App'x 879, 882 (6th Cir. 2007) (citation omitted) ("a hearing [is] 'any on-the-record colloquy in which the district court hears the arguments of counsel and considers those arguments prior to deciding a pending motion,'" and "[o]nly a sham hearing will lose the benefit of the § 3161(h)(1)(F) excludable delay provision"); United States v. Smith, 569 F.3d 1209, 1213 (10th Cir. 2009) (refusing to "second-guess trial court's decision to hold" hearing, "[e]ven if the motions were weak on the merits").

### III. Conclusion

On the basis of the foregoing, Defendant's Motions to Dismiss the Indictment pursuant to the Speedy Trial Act and the Sixth Amendment will be denied.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE